ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A Professional Law Corporation
Joseph K. Lee          State Bar No. 289258
    Joseph.Lee@aalrr.com
20 Pacifica, Suite 1100
Irvine, California 92618-3371
Telephone:  (949) 453-4260
Fax:  (949) 453-4262

-and-

Seth Ogden *(Pro Hac Vice* to be filed)
sro@iplawgroup.com
PATTERSON INTELLECTUAL PROPERTY LAW, P.C.
1600 Division Street, Suite 500
Nashville, TN 37203
Telephone: (615) 242-2400
Facsimile:  (615) 242-2221

Attorneys for Plaintiff
Alien Processing, LLC d/b/a C1D1 Labs

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| ALIEN PROCESSING, LLC d/b/a C1D1 LABS,<br><br>    Plaintiff,<br><br>    v.<br><br>PLATINUM FINISHING SYSTEMS, INC. d/b/a/ ADVANCED EXTRACTION LABS and C1D1 BOOTHS,<br><br>    Defendants. | CASE NO. 3:26-cv-1401<br><br>**COMPLAINT FOR PATENT INFRINGEMENT,**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Alien Processing, LLC d/b/a/ C1D1 Labs ("**Plaintiff**" or "**C1D1**"), by its attorneys, files this Complaint for patent infringement against Platinum Finishing Systems, Inc. d/b/a/ Advanced Extraction Labs and C1D1 Booths ("**Defendant**" or "**Platinum**"), and alleges as follows:

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
TELEPHONE: (949) 453-4260
FAX: (949) 453-4262

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
TELEPHONE: (949) 453-4260
FAX: (949) 453-4262

## PARTIES

1.      C1D1 is a corporation organized and existing under the laws of the State of Nevada with a principal place of business at 3320 Research Way, Unit 110, Carson City, NV 89706.

2.      On information and belief, Platinum is a California corporation with a principal place of business at 1695 Piner Road, Unit A, Santa Rosa, CA 95403.

3.      On information and belief, Platinum is the registered entity doing business as both Advanced Extraction Labs ("**Advanced**") and C1D1 Booths.

4.      Additionally, Advanced's website lists its address as 1402 Airport Boulevard, Santa Rosa, CA 95403. *See Un-listed Extraction Labs,* ADVANCED EXTRACTION LABS, https://advancedextractionlabs.com/ (last visited Nov. 19, 2025).

5.      On information and belief C1D1 Booths's address is 1402 Airport Boulevard, Santa Rosa, CA 95403.

## JURISDICTION

6.      This Court has subject-matter jurisdiction over C1D1's claims arising under the patent laws of the United States, 35 U.S.C. § 100, *et seq.*, pursuant to 28 U.S.C. §§ 1331, 1332, and 1338(a)–(b).

7.      This Court has personal jurisdiction over Platinum because it or its employees have committed acts of patent infringement under 35 U.S.C. § 271(a), (b), or (c), and are subject to this Court's jurisdiction under 28 U.S.C. § 1400(b).

8.      This Court has personal jurisdiction over Platinum because, on information and belief, it is a California corporation and has its principal place of business in this District.

9.      Further, the acts complained of herein occurred in California.

10.     Similarly, the exercise of personal jurisdiction over Platinum comports with the due process requirements of the United States Constitution because:

COMPLAINT FOR PATENT INFRINGEMENT

(a)    Defendant has purposefully established "minimum contacts" with the State of California and this District; and

(b)    the exercise of personal jurisdiction over Platinum will not offend the traditional notions of fair play and substantial justice.

11.    Therefore, this Court has specific and general jurisdiction over Platinum.

## VENUE

12.    Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400 at least because Platinum is a resident of and has its principal place of business in this District and is subject to personal jurisdiction in this District.

## INTRADISTRICT ASSIGNMENT

13.    Because this lawsuit arose in Sonoma County, it should be assigned to the San Francisco Division of this Court.

## BACKGROUND

14.    C1D1 is a leading provider of innovative extraction solutions made in the United States of America. C1D1 sells the C1D1 modular extraction booth, which is designed to meet the highest safety and efficiency standards in the industry. Each C1D1 Extraction Booth comes with all the Class 1 Division 1 electronics such as lighting, gas sensors, alarms, horns, exit signs and e-stop, as well as the explosion proof intake and exhaust fans. C1D1 extraction booths work for both hydrocarbon or alcohol extraction and provide the required interlocks by NFPA 1.

15.    C1D1 owns U.S. Patent No. 10,232,286, entitled "Closed oil extraction booth with integrated ventilation system" ("**the '286 Patent**"), which covers its innovate modular extraction booth.

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
TELEPHONE: (949) 453-4260
FAX: (949) 453-4262

COMPLAINT FOR PATENT INFRINGEMENT

16.    C1D1's website includes a virtual patent marking page identifying the '286 Patent as covering its C1D1 modular extraction booths: *Patents*, C1D1 LABS, https://c1d1labs.org/patents/ (last visited Nov. 18, 2025).

A.    **The '286 Patent**

17.    On March 19, 2019, the United States Patent and Trademark Office ("**USPTO**") duly and lawfully issued U.S. Patent No. 10,232,286. A true and correct copy of the '286 Patent is attached hereto as **Exhibit A**. The '286 Patent was assigned to C1D1 on January 4, 2024, and C1D1possesses the exclusive right of recovery for any past, present, or future infringements of the '286 Patent, including equitable relief and damages.

18.    The '286 Patent discloses and claims a modular extraction booth designed to provide a safe and explosion-proof environment for solvent-based oil extraction.

19.    The specification describes a booth assembled from prefabricated wall and ceiling panels to create an airtight interior workspace and includes a ventilation system that draws filtered air into the booth and exhausts hazardous vapors out through ductwork powered by an exhaust blower. To minimize explosion risk, electrical components and equipment are located outside the booth, with ports allowing necessary piping to enter, thereby reducing the need for costly explosion-proof devices inside the booth.

20.    The patent further describes a gas monitoring and control system that automatically adjusts ventilation speed in response to detected solvent vapors. A controller receives signals from gas sensors within the booth and regulates the inlet and exhaust blowers accordingly: operating at a base level under safe conditions and switching to a higher airflow rate when gas concentrations approach hazardous levels. The system may also trigger alarms, warning lights, and automatic solvent shut off when dangerous conditions are detected. These safety features ensure compliance

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
TELEPHONE: (949) 453-4260
FAX: (949) 453-4262

with hazardous-environment standards while providing a cost-effective, portable, and modular solution for oil extraction operations.

21.     Through this combination of modular construction, integrated ventilation, externalized electrical equipment, and automated safety controls, the '286 patent provides a practical and compliant solution for performing plant oil extraction using flammable solvents. The patented technology directly addresses the hazards of explosive vapors and toxic exposure, while offering a safer, more economical alternative to traditional explosion-rated facilities.

### B.   Defendants' Unlawful Conduct

22.     On information and belief, since at least July 4, 2022, Platinum d/b/a Advanced has advertised and sold the Exxa Series extraction booth ("**Accused Device A**").

23.     Advanced's website describes the Exxa Series extraction booth as follows: "[t]his C1D1 laboratory booth is compatible with any extractor type including closed loop, centrifuge systems, and much more, including this modular clean room!" *Exxa Series*, ADVANCED EXTRACTION LABS, https://advancedextractionlabs.com/products-page/exxa-series-c1d1-booth/ (last visited Nov. 19, 2025).

24.     On information and belief, the Accused Device A implements the same or substantially the same technology as the '286 Patent.

25.     On information and belief, the Accused Device A includes or performs each and every limitation of at least one claim of the '286 Patent, either literally or under the doctrine of equivalents. By making, using, offering to sell, selling, and/or importing into the United States the Accused Device A, Advanced has directly infringed, and continues to directly infringe, literally or under the doctrine of equivalents, one or more claims of the '286 Patent under 35 U.S.C. § 271(a).

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
TELEPHONE: (949) 453-4260
FAX: (949) 453-4262

26. Specifically, the images below are representative of Advanced's infringing conduct:



Exxa Series is the perfect choice for labs looking to have a high output. Designed to be run all day, this lab is compatible with all extraction types and can be made into a dual zone environment. UL listed and PSI peer reviewed. This C1D1 laboratory booth is compatible with any extractor type including closed loop, centrifuge systems, and much more, including this modular clean room!

COMPLAINT FOR PATENT INFRINGEMENT

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
TELEPHONE: (949) 453-4260
FAX: (949) 453-4262

*See id.*

27.    On information and belief, since at least March 21, 2023, Platinum d/b/a/ C1D1 Booths has advertised and sold its C1D1 booths, including the exemplary Model D Lab, (each booth the "**Accused Device B**").

28.    On information and belief, the Accused Device B implements the same or substantially the same technology as the '286 Patent.

29.    On information and belief, the Accused Device B includes or performs each and every limitation of at least one claim of the '286 Patent, either literally or under the doctrine of equivalents. By making, using, offering to sell, selling, and/or importing into the United States the Accused Device B, Defendant has directly infringed, and continues to directly infringe, literally or under the doctrine of equivalents, one or more claims of the '286 Patent under 35 U.S.C. § 271(a).

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
TELEPHONE: (949) 453-4260
FAX: (949) 453-4262

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
TELEPHONE: (949) 453-4260
FAX: (949) 453-4262

30.     Specifically, the images below are representative of C1D1 Booths's infringing conduct:



*See Model D Lab-10'W X 9'H x 30'L*, C1D1 Booths, Extraction Booth Galvanized Sheet Metal Panels | C1D1 Booths (last visited Nov. 21, 2025).

*See Lab Package: Model D Lab And 45L Centrifuge Turnkey System*, C1D1 Booths, 45L Centrifuge Package Turnkey Model | C1D1 Booths (last visited Nov. 21, 2025).

COMPLAINT FOR PATENT INFRINGEMENT

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
TELEPHONE: (949) 453-4260
FAX: (949) 453-4262

**NATURE OF THIS ACTION**

31.    This is a civil action by C1D1 arising out of Platinum's patent infringement in violation of the patent laws of the United States, 35 U.S.C. § 1 *et seq.*

32.    C1D1 owns U.S. Patent No. 10,232,286, entitled "Closed oil extraction booth with integrated ventilation system" ("**the '286 Patent**"), which covers its innovative modular extraction booth.

33.    Through Advanced Extraction Labs, Platinum sells the Exxa Series extraction booth, which infringes at least claim 1 of the '286 Patent.

34.    Through C1D1 Booths, Platinum sells a range of C1D1 booths, including its Model D Lab, that infringe at least one claim of the '286 Patent.

35.    Platinum's willful and continuing patent infringement should be enjoined permanently to curb the harm to C1D1's  market share and resulting price erosion. C1D1 has been, and continues to be, irreparably damaged as a result of Defendant's willful actions and seeks injunctive and monetary relief.

**COUNT I: INFRINGEMENT OF U.S. PATENT NO. 10,232,286**

36.    C1D1 repeats and re-alleges paragraphs 1–35 as if fully set forth herein.

37.    The '286 Patent is directed towards an oil extraction booth. Exemplary Claim 1 of the '286 Patent recites:

An oil extraction booth, comprising:

a plurality of pre-fabricated wall panels;

a plurality of pre-fabricated ceiling panels;

a door;

a ventilation system configured to remove air from the booth, comprsing:

an air intake configured to pass filtered air into the booth;

a vertical exhaust duct secured to a wall panel and having an open upper end at or above the ceiling panels and a lower end proximate to a floor;

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
TELEPHONE: (949) 453-4260
FAX: (949) 453-4262

1    an exhaust vent in the lower end of the exhaust duct; and

2    an exhaust fan coupled to the upper end of the exhaust duct

3    external to the booth above the ceiling panels;

4    ports in one or more wall panels through which piping from equipment

5    located outside the booth passes;

6    an electrical panel secured to the outside of a wall panel configured to

7    control the equipment located outside the booth; and

8    a monitoring system, comprising:

9        at least one sensor sensitive to the presence of one or more gases

10   or liquids within the booth; and

11       a monitor to which the at least one sensor is coupled and

12   programmed to provide an alarm when the concentration of the one or

13   more gases or liquids exceeds a first predetermined level.

14   38.    The Accused Device A is "[a]n oil extraction booth." For example,

15   Advanced's website states: "Our Exxa Series C1D1 extraction booths are compatible

16   with any solvent type including hydrocarbon, butane, ethanol, and pentane!"

17   39.    The Accused Device A comprises "a plurality of pre-fabricated wall

18   panels," as shown in the image below taken from Advanced's website:



26   40.    The Accused Device A comprises "a plurality of pre-fabricated ceiling

27   panels," as shown in the image below taken from Advanced's website:

COMPLAINT FOR PATENT INFRINGEMENT

1
2
3
4
5
6
7
8



9   41.    The Accused Device A comprises "a door," as shown in the image

10  below taken from Advanced's website:

11
12
13
14
15
16
17
18



19  42.    The Accused Device A comprises "a ventilation system configured to

20  remove air from the booth." For example, Advanced's website notes that its standard

21  Exxa Series Lab Package includes a "high velocity exhaust system."

22  43.    On information and belief, the ventilation system of the Accused Device

23  A comprises "an air intake configured to pass filtered air into the booth" as part of the

24  high velocity exhaust system.

25  44.    On information and belief, the ventilation system of the Accused Device

26  A comprises "a vertical exhaust duct secured to a wall panel and having an open upper

27  end at or above the ceiling panels and a lower end proximate to a floor" as part of the

28  high velocity exhaust system. For example, the image below taken from Advanced's

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
TELEPHONE: (949) 453-4260
FAX: (949) 453-4262

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
TELEPHONE: (949) 453-4260
FAX: (949) 453-4262

website appears to show a vertical exhaust duct secured to a wall panel with an open upper end above the ceiling panels:



Since the '286 Patent issued, it has become well known in the art to place the lower end of the exhaust duct proximate to the floor due to the density of the gaseous materials being removed from the room being higher than that of the ambient air.

45.    On information and belief, the ventilation system of the Accused Device A comprises "an exhaust vent in the lower end of the exhaust duct" as part of the high velocity exhaust system. An exhaust vent must be included to satisfy C1D1 safety standards.

46.    On information and belief, the ventilation system of the Accused Device A comprises "an exhaust fan coupled to the upper end of the exhaust duct external to the booth above the ceiling panels" as part of the high velocity exhaust system. An exhaust fan must be included to satisfy C1D1 safety standards.

47.    The Accused Device A comprises "ports in one or more wall panels through which piping from equipment located outside the booth passes," as shown in the image below taken from Advanced's website:

COMPLAINT FOR PATENT INFRINGEMENT

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
TELEPHONE: (949) 453-4260
FAX: (949) 453-4262



48.    The Accused Device A comprises "an electrical panel secured to the outside of a wall panel configured to control the equipment located outside the booth," as shown in the image below taken from Advanced's website:



49.    The Accused Device A comprises "a monitoring system" that comprises "at least one sensor sensitive to the presence of one or more gases or liquids within the booth; and a monitor to which the at least one sensor is coupled and programmed to provide an alarm when the concentration of the one or more gases or liquids exceeds a first predetermined level." For example, Advanced's website notes that its standard Exxa Series Lab Package includes an "LEL Gas Detection System."

50.    Exemplary Claim 6 of the '286 Patent recites:

An oil extraction booth, comprising:

COMPLAINT FOR PATENT INFRINGEMENT

first and second pre-fabricated side modules securable to each other to create a first air-tight interior work space;

an inlet blower mechanically coupled to first ductwork between inner and outer walls of the first side module and configured to move air from the exterior of the extraction booth, through the first ductwork, and into the work space;

an exhaust blower mechanically coupled to second ductwork between inner and outer walls of the second side module and configured to remove air from the work space, through the second ductwork, and into the exterior of the extraction booth;

a sensor sensitive to the presence of a gas within the work space; and

a controller electrically coupled to control the speed of the inlet blower and the exhaust blower and electrically coupled to receive a signal from the sensor indicative of an amount of the gas in the work space, the controller configured to:

operate the inlet blower and the outlet blower at a first speed when the amount of the gas detected by the sensor is less than a first predetermined value; and

operate the inlet blower and the outlet blower at a second, higher speed when the amount of the gas detected by the sensor equals or exceeds the first predetermined value.

51.    The Accused Device B is "[a]n oil extraction booth." By definition and common industry practice, the Accused Device B is an oil extraction booth. For example, the Model D Lab is available as both a C1D1 and C1D2 booth. *See Model D Lab-10'W X 9'H x 30'L*, C1D1 BOOTHS, <u>Extraction Booth Galvanized Sheet Metal Panels | C1D1 Booths</u> (last visited Nov. 21, 2025). The terms "C1D1" and "C1D2" respectively refer to "Class 1, Division 1" and "Class 1, Division 2"— classifications assigned to environments where flammable vapors are present in the

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
TELEPHONE: (949) 453-4260
FAX: (949) 453-4262

production of cannabis and hemp oils. It is thus understood in the art that C1D1 and C1D2 booths refer specifically to closed-loop extraction, distillation, and processing environments to produce concentrated oils. *See Applications & Uses of Distillation*, C1D1 BOOTHS, Applications & Uses of Distillation - C1D1 BOOTHS (last visited Nov. 21, 2025).

52.    The Accused Device B comprises "a first and second pre-fabricated side modules securable to each other to create a first air-tight interior work space," as shown below in the image from C1D1 Booth's website:



*See Model D Lab-10'W X 9'H x 30'L*, C1D1 BOOTHS, Extraction Booth Galvanized Sheet Metal Panels | C1D1 Booths (last visited Nov. 21, 2025). Furthermore, the website describes construction of the Accused Device B includes "18 gauge, galvanized sheet panels. Assembly makes the panels sealed for airtight joints," thus meeting this claim limitation." *See id.*

53.    On information and belief, the Accused Device B comprises "an inlet blower mechanically coupled to first ductwork between inner and outer walls of the first side module and configured to move air from the exterior of the extraction booth, through the first ductwork, and into the work space." Particularly, Defendant's intake fan in its "intake/exhaust fan kit 24," highlighted below, operates as the inlet blower:

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
TELEPHONE: (949) 453-4260
FAX: (949) 453-4262

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
TELEPHONE: (949) 453-4260
FAX: (949) 453-4262



*See Lab Package: Model D Lab And 45L Centrifuge Turnkey System*, C1D1 Booths, 45L Centrifuge Package Turnkey Model | C1D1 Booths (last visited Nov. 21, 2025). The intake fan is a direct drive, tube axial fan with mounting flanges on one end for connection with first ductwork evidence by the following component:



- 9 Foot Chimney Kit w/ARV – 18" diameter
- 3' Plain Duct, 3' w/ Clean Out Duct, roof flashing, rain collar, connection ring and automatic roof ventilator

Part#DCT18

*See Model D Lab-10'W X 9'H x 30'L*, C1D1 Booths, Extraction Booth Galvanized Sheet Metal Panels | C1D1 Booths (last visited Nov. 21, 2025). It should be understood that first ductwork is between inner and outer walls, as air slits (pictured

COMPLAINT FOR PATENT INFRINGEMENT

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
TELEPHONE: (949) 453-4260
FAX: (949) 453-4262

below) are provided along the inner wall to enable airflow from the exterior of the extraction booth, through the first ductwork, and into the work space:



*See Lab Package: Model D Lab And 45L Centrifuge Turnkey System*, C1D1 BOOTHS, [45L Centrifuge Package Turnkey Model | C1D1 Booths](#) (last visited Nov. 21, 2025).

54.     On information and belief, the Accused Device B comprises "an exhaust blower mechanically coupled to second ductwork between inner and outer walls of the second side module and configured to remove air from the work space, through the second ductwork, and into the exterior of the extraction booth." For example, the Accused Device B includes an exhaust fan "outside mounted" on the booth in its "intake/exhaust fan kit 24" that operates as an exhaust blower to remove air from the work space and into the exterior of the extraction booth. *See Model D Lab-10'W X 9'H x 30'L*, C1D1 BOOTHS, [Extraction Booth Galvanized Sheet Metal Panels | C1D1 Booths](#) (last visited Nov. 21, 2025). And because the exhaust fan is configured to mount on ductwork similar to the intake fan in paragraph 53 mounted to ductwork on one side module, the exhaust fan should likewise be understood to be coupled to second ductwork between inner and outer walls of second side module. *See id.*

-17-

55.     The Accused Device B comprises "a sensor sensitive to the presence of a gas within the work space," as contemplated in the image pulled from C1D1 Booths's website:



**Gas Detector-M2A Series**

- Pre-calibrated and programmed for your solvent type.
- Stand Alone Explosion Proof Transmitter
- This gas detector head operates with or without a controller
- Direct digital readout with OLED cold temperature display
- Available gases include
  - LEL, O2, H2S, CO, CO2, and 100% Vol CH4
  - Toxic gases include NH3, AsH3, Cl2, ClO2, HCN, & SO2
- Infrared sensor for combustibles and CO2
- 4-20 mA & digital Modbus outputs standard
- 2 fully programmable alarm relays & fail relay
- Non-intrusive calibration via magnetic wand
- Explosion proof construction
- Patented water repellent sensor cover
- User friendly setup, push buttons & OLED menus
- Long-life sensors (2 + years typical)

*See id.*

56.     The Accused Device B comprises "a controller electrically coupled to control the speed of the inlet blower and the exhaust blower and electrically coupled to receive a signal from the sensor indicative of an amount of the gas in the work space," as depicted below in the image from C1D1 Booths's website:

-18-

COMPLAINT FOR PATENT INFRINGEMENT



- PLC
- Motor Starter
- UL Listed Control Panel
- Variable Speed drive
- Air Sensor control
- Air detection sensor
- E STOP For service
- Emergency Purge Button

This control will comply with CID1 booth and Extraction booths to increase the air volume for 10% of the LEL and 25% of the LEL (Lower Explosion Limit per NFPA Requirements) **Sensor sold separately** Part#CPM3 Order our CPM2 variant for more.

*See id.* As described in that image, the controller of the Accused Device B configured "to increase the air volume for 10% of the LEL and 25% of the LEL (Lower Explosion Limit per NFPA Requirements," meaning it will control the speed of the intake and exhaust fans to control the air volume in the work space. *See id.* Additionally, the controller is configured to receive signals from an "air detection sensor," such as the sensor in paragraph 58, that indicates the amount of gas in the work space, thereby meeting this claim limitation. *See id.*

57.    The Accused Device B comprises, a controller configured to "operate the inlet blower and the outlet blower at a first speed when the amount of the gas detected by the sensor is less than a first predetermined value." It has become known in the art that 10% of the LEL and 25% of the LEL refer to NFPA safety thresholds that correlate to values of flammable vapor in the ambient air that are capable of becoming ignitable. Accordingly, 10% of the LEL or 25% of the LEL may refer to predetermined values that the controller of the Accused Device B is configured to detect. Thus, when the controller receives a signal from the air detections sensor, like that in paragraph 58, that the value of flammable air has not yet surpassed the safety threshold, the controller will operate the air volume at a first speed.

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
TELEPHONE: (949) 453-4260
FAX: (949) 453-4262

58.    The Accused Device B further comprises a controller configured to "operate the inlet blower and the outlet blower at a second, higher speed when the amount of the gas detected by the sensor equals or exceeds the first predetermined value." As explained in C1D1 Booths's website, the controller of the Accused Device B will "increase the air volume for 10% of the LEL and 25% of the LEL," meaning it will command the intake and exhaust fans to operate a second, higher speed when the gas detected by the air detection sensor equals or exceeds the NFPA safety threshold values of 10% of the LEL and 25% of the LEL that indicate how close the atmosphere is to becoming ignitable. *See id.*

59.    Defendant's direct infringement of the '286 Patent has been, and continues to be, willful. On information and belief, Defendant has been aware of the '286 Patent before the filing of this Complaint and has infringed the '286 Patent willfully and deliberately and with knowledge that such conduct violates 35 U.S.C. § 271. For example, as a direct competitor of C1D1, Defendant had constructive knowledge of the '286 Patent via C1D1's virtual patent marking page.

60.    Defendant's direct infringement of the '286 Patent has damaged, and continues to damage, C1D1 in an amount yet to be determined, of at least a reasonable royalty and/or lost profits that C1D1 would have made but for Defendant's infringing acts as provided by 35 U.S.C. § 284.

61.    C1D1 will suffer irreparable harm unless Defendant is enjoined from infringing the '286 Patent.

## **PRAYER FOR RELIEF**

WHEREFORE C1D1 requests entry of judgment against Defendant as follows:

1.    A judgment that Defendant has infringed one or more claims of the '286 Patent in violation of 35 U.S.C. § 271(a);

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
TELEPHONE: (949) 453-4260
FAX: (949) 453-4262

2.      An award of damages not less than a reasonable royalty for infringement of the Asserted Patents, with said damages to be trebled because of the intentional and willful nature of Defendant's infringement, as provided by 35 U.S.C. § 284;

3.      A judgment that Defendant has willfully infringed one or more claims of the '286 Patent;

4.      A determination that this case is "exceptional" under 35 U.S.C. § 285 and an award of C1D1's reasonable attorneys' fees;

5.      An order permanently enjoining Defendant, their officers, directors, employees, agents, and all persons acting in concert with them, from infringing the '286 Patent;

6.      An award of pre-and post-judgment interest of any monetary damages at the highest rate allowed by law;

7.      An award of C1D1's costs and expenses in this action; and

8.      For such other relief as the Court may deem just and proper.

## <u>JURY DEMAND</u>

Under Rule 38 of the Federal Rules of Civil Procedure, C1D1 hereby demands a trial by jury on all issues so triable.

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
TELEPHONE: (949) 453-4260
FAX: (949) 453-4262

1

2    DATED:  February 17, 2026          ATKINSON, ANDELSON, LOYA, RUUD &
                                       ROMO

3                                      /s/  Joseph K. Lee

4

5                                      - and –

6                                      Seth Ogden (*Pro Hac Vice* to be filed)
                                       sro@iplawgroup.com
7                                      **PATTERSON INTELLECTUAL**
                                       **PROPERTY LAW, P.C.**
8                                      1600 Division Street, Suite 500
                                       Nashville, TN 37203
9                                      Telephone: (615) 242-2400
                                       Facsimile: (615) 242-2221
10
                                       *Attorneys for Plaintiff*
11                                     *Alien Processing, LLC d/b/a C1D1 Labs*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-22-

COMPLAINT FOR PATENT INFRINGEMENT